UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS A. MACHADO, | ) 1:04-cv-6691-SMS |
| | ) |
| Plaintiff, | ) DECISION AND ORDER ON SOCIAL |
| | ) SECURITY COMPLAINT (DOC. 1) |
| | ) |
| v. | ) ORDER DIRECTING REMAND PURSUANT |
| | ) TO SENTENCE FOUR of 42 U.S.C. § |
| JO ANNE B. BARNHART, | ) 405(g) |
| Commissioner of Social | ) |
| Security, | ) ORDER DIRECTING THE CLERK TO |
| | ) ENTER JUDGMENT FOR PLAINTIFF |
| Defendant. | ) CARLOS A. MACHADO AND AGAINST |
| | ) DEFENDANT JO ANNE B. BARNHART |
| | ) |

Plaintiff, Carlos Machado, who is proceeding with counsel, seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act (Act) and supplemental security income (SSI) pursuant to Title XVI of the Act. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all further proceedings, including the entry of a final judgment.[1] The matter is currently before

---

[1] Judge Oliver W. Wanger ordered the case assigned to the undersigned Magistrate Judge for all purposes on April 14, 2005.

the Court on the parties' briefs, which have been submitted
without oral argument to the Honorable Sandra M. Snyder, United
States Magistrate Judge.

Prior Proceedings

On May 24, 2001, Plaintiff applied for SSI payments and DIB
benefits, alleging disability beginning on October 15, 2001, due
to asthma. (A.R. 57-60.) Plaintiff's claim was denied initially
and on reconsideration. (A.R. 43-46, 49-52.) Plaintiff then
requested a hearing before an administrative law judge (ALJ) of
the Social Security Administration (SSA). On June 30, 2004,
Plaintiff appeared with an attorney and testified before the ALJ,
James Ross. (A.R. 312-39.) Plaintiff's girlfriend, Cynthia
Bowles, also testified at the hearing. (A.R. 339.) On July 27,
2004, the ALJ denied Plaintiff's application for benefits. (A.R.
13-19.) Plaintiff appealed the ALJ's decision to the Appeals
Council. On October 29, 2004 the Appeals Council denied
Plaintiff's request for review. (A.R. 5-7.)

On December 13, 2004, Plaintiff filed the complaint in the
instant action; the administrative record was lodged by Defendant
on March 31, 2005. On July 17, 2005, Plaintiff filed an opening
brief. On September 20, 2005, Defendant filed a brief in
opposition. Plaintiff filed a reply on October 10, 2005.

Administrative Findings

The ALJ concluded that Plaintiff had a severe impairment,
asthma, but it did not meet or equal a listed impairment in
Appendix 1, Subpart P, Regulation Number 4. (A.R. 14.)
Plaintiff's subjective complaints were not fully credible and
were not supported by the evidence of record. (A.R. 18.) The ALJ

2

considered the medical opinions in the record and concluded that
Plaintiff had the residual functional capacity (RFC) to engage in
work activity at all levels of exertion, but Plaintiff's RFC for
a full range of heavy work was reduced because of Plaintiff's
inability to be exposed to excessive amounts of dust, fumes, or
other pulmonary irritants. (A.R. 17.) Plaintiff could not perform
his past relevant work as a tow truck driver or barn cleaner due
to his pulmonary limitations. (A.R. 18.) However, because there
were multiple exertional levels in which Plaintiff could perform
a full range of work, the ALJ utilized section 204.00, Appendix
2, Subpart P, Regulations Number 4, in conjunction with Social
Security Ruling 85-15, to determine that Plaintiff was not
disabled. (A.R. 18.)

Issues Presented

Reference to the briefs reveals that the following issues
are presented for decision:

1) Whether the ALJ erred in rejecting Plaintiff's subjective
complaints;

2) Whether the ALJ improperly rejected the opinion of
Plaintiff's treating physician in determining Plaintiff's RFC;
and

3) Whether the ALJ committed a reversible error by not
discussing lay witness testimony.

Facts

I. Testimony at the Hearing

Plaintiff was born on August 30, 1953, and was fifty at the
time of the hearing. (A.R. 317.) Plaintiff testified that he
attended four years of school in the Azores and that he could

read and write a little English, but he mainly used Portuguese. (A.R. 317-19.) Plaintiff had previously worked as a barn cleaner and tow truck driver. (A.R. 319-21.) He stopped working in September 2001 because he got tired and short of breath. (A.R. 319, 321.)

Plaintiff began to experience breathing problems in 1996 or 1997, and these became worse in September 2001. (A.R. 322.) He used a nebulizer four times a day for about fifteen to twenty minutes. (A.R. 322-323.) Plaintiff was hospitalized in June 2001 for pneumonia, and in September 2001, August 2003, and December 2003 for reactions to medications. (A.R. 323.) Plaintiff experienced asthma attacks but did not know how often they occurred. (A.R. 323-324.) Chemicals, cleansers, and hot weather triggered his asthma problems. (A.R. 324.)

Plaintiff lived with his girlfriend and his daughter. (A.R. 329.) On a typical day, Plaintiff awoke at seven o'clock in the morning and drove his daughter to school. If he felt up to it, he cleaned the yard until he felt tired and then went inside. (A.R. 330.) He lay down from noon until three o'clock in the afternoon. (A.R. 326.) Around three o'clock, he left the house to pick up his daughter from school. (A.R. 326.) His main activity consisted of watching television. (A.R. 330.) Plaintiff had trouble sleeping at night because he experienced difficulty breathing. (A.R. 329.)

Plaintiff testified that every four days he had a bad day with chest pains and breathing problems. (A.R. 331-332.) On those days, he stayed home and used the nebulizer more. (A.R. 332.) He experienced some side effects from his medications, such as

4

drowsiness. (A.R. 332.)

Plaintiff's girlfriend, Cynthia Bowles, testified that she had been with Plaintiff for twenty-one years. (A.R. 339.) She stated that Plaintiff had difficulties breathing and doing activities, and hot weather bothered him. (A.R. 339-341.) He could no longer go to the mall or bag groceries because he quickly became winded. (A.R. 342-43.) Plaintiff no longer did yard work and only did a little housework. (A.R. 342.) He had been very active two or three years before but more recently had only been able to help with small things. (A.R. 341-342.) In her opinion, Plaintiff's condition was getting worse, but the nebulizer helped him. (A.R. 342, 344.)

II. <u>Medical History</u>

Plaintiff was treated for tuberculosis in 1986. (A.R. 128.) He started to experience breathing difficulties in 1998. (A.R. 128.) In July 1999, Plaintiff was treated at a hospital emergency room because of trouble breathing. (A.R. 100-104.) Plaintiff saw Dr. Jatinder Chopra for treatment of his asthma from September 1999 to June 2004. (A.R. 135-53, 249-64, 270-81.) Plaintiff visited Dr. Chopra approximately forty-five times during this five-year period. (A.R. 280-281.) Plaintiff complained of chest congestion, shortness of breath, dizziness, and trouble breathing. (A.R. 135-153, 270-281, 285-301.) Dr. Chopra noted that Plaintiff suffered from coughing and wheezing and diagnosed Plaintiff with acute bronchitis and asthma. (A.R. 149-151, 273-74, 277.) Dr. Chopra further noted that Plaintiff continued to smoke despite the risks. (A.R. 141-142.) A significant number of Plaintiff's visits were follow-up appointments. (A.R. 137-40,

142, 149-51, 272-73, 298.)

In June 2001, Plaintiff was treated for pneumonia at a hospital emergency room. (A.R. 111.) A chest x-ray revealed coarse lung markings in the right lung. (A.R. 120.) In September 2001, Plaintiff was again seen in the emergency room for an allergic reaction. (A.R. 249-264.) A chest x-ray revealed a few pulmonary parenchymal calcifications and minimal fibrosis in the right and left lungs, consistent with old granulomatous disease. (A.R. 259.) The infiltrates found in the June 2001 x-ray had cleared. (A.R. 146.) There was no evidence of active pulmonary tuberculosis, coccidioidomycosis, or pneumonia. (A.R. 259.) A respiratory assessment obtained in September 2001 showed no abnormal findings. (A.R. 260.)

In January 2002, Plaintiff underwent a consultative internal medicine examination performed by Dr. Tomas Rios. (A.R. 128-131.) Dr. Rios found that Plaintiff's chest and lungs showed slightly diminished breathing sounds, especially in the right lower lobe. (A.R. 130.) However, Dr. Rios noted that there was no indication of any expiratory wheezing, egophony, crackles, or any other significant respiratory compromise. (A.R. 130.) Dr. Rios further noted that the clinical findings did not indicate a chronic hypoxic state, and Plaintiff's allegation of severe complications from his reactive airway disease appeared to be clinically controlled. (A.R. 130.) Nevertheless, Dr. Rios opined that Plaintiff should not work in an enclosed environment where there was frequent exposure to smoke, dust, or fumes that could exacerbate his underlying reactive airway disease. (A.R. 131.)

In February 2002, a state agency physician reviewed the

medical evidence and opined that Plaintiff had no exertional

limitations but should avoid concentrated exposure to fumes,

odors, dusts, gases, and areas with poor ventilation. (A.R. 154-

161.) Another State Agency physician agreed and affirmed these

findings on September 10, 2002. (A.R. 161.)

In December 2002, Plaintiff again received emergency room

treatment due to a severe reaction to medication. (A.R. 236.) A

chest x-ray, obtained after Plaintiff complained of chest pain,

revealed no acute intrathoracic abnormalities. (A.R. 244.)

Plaintiff was discharged with a tapering dose of Prednisone.

(A.R. 243.) Plaintiff also sought emergency room treatment in

August 2003 due to chest pain with inspiration. (A.R. 229.) He

received breathing treatment with no distress or complications

noted. (A.R. 229.) He appears to have been discharged the same

day. (A.R. 229.)

On December 8, 2003, Dr. Chopra completed a pulmonary RFC

questionnaire in which he reported that Plaintiff experienced

asthma attacks once or twice a month. (A.R. 265-69.) Dr. Chopra

opined that Plaintiff could walk one or two city blocks without

rest; sit for a total of about four hours in an eight-hour day;

stand for one hour at a time for a total of about two hours in an

eight-hour day; rarely lift less than ten pounds; occasionally

twist; and should avoid all exposure to pulmonary irritants and

extreme cold, heat, and high humidity. (A.R. 267-268.) Dr. Chopra

further stated that Plaintiff would need to take unscheduled

breaks two to three times during an eight-hour workday for one

hour at a time before returning to work. (A.R. 267.) In March

2004, Dr. Chopra prescribed a nebulizer machine. (A.R. 286.)

Scope and Standard of Review

_____ Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the

8

Commissioner applied the proper legal standards, and if the

Commissioner's findings are supported by substantial evidence.

See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

the Court concludes that the ALJ did not use the proper legal

standard, the matter will be remanded to permit application of

the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

Cir. 1987).

Analysis

I. Disability

In order to qualify for benefits, a claimant must establish

that she is unable to engage in substantial gainful activity due

to a medically determinable physical or mental impairment which

has lasted or can be expected to last for a continuous period of

not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).

A claimant must demonstrate a physical or mental impairment of

such severity that the claimant is not only unable to do the

claimant's previous work, but cannot, considering age, education,

and work experience, engage in any other kind of substantial

gainful work which exists in the national economy. 42 U.S.C.

1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th

Cir. 1989). The burden of establishing a disability is initially

on the claimant, who must prove that the claimant is unable to

return to his or her former type of work; the burden then shifts

to the Commissioner to identify other jobs that the claimant is

capable of performing considering the claimant's RFC, as well as

her age, education and last fifteen years of work experience.

Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (1997);[2] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient RFC, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and RFC, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is essentially the same. See, 20 C.F.R. § 416.920.

II. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's subjective complaints regarding the severity of his symptoms. Specifically, Plaintiff asserts that the ALJ erred in his credibility determination by failing to

---

[2] All references are to the 2004 version of the Code of Federal Regulations unless otherwise noted.

consider the frequency with which Plaintiff sought treatment.

The existence and severity of a person's reaction to a physical ailment, such as pain, are subjective phenomena, the extent of which cannot be objectively measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In order to reject a claimant's subjective complaints, the ALJ must provide specific, cogent reasons for the disbelief. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant introduces medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the subjective symptoms, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not credible and what evidence undermines the claimant's complaints. Lester v. Chater, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir. 1995).

Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory

findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and adverse side effects of any medication for pain or other symptoms;
5. Treatment, other than medication, for relief of pain or other symptoms;
6. Any measures other than treatment used by the individual to relieve the pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See also Bunnell v. Sullivan, 947 F.2d at 346.

Here, the ALJ found incredible Plaintiff's claims of debilitating breathing problems, including frequent asthma attacks. (A.R. 15-18.) The ALJ rejected these claims in part because there was not significant objective evidence to support a finding of disability. (A.R. 49.) Although the inconsistency of objective evidence with subjective claims may not be the sole reason for rejecting subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999).

Although Plaintiff testified that he was unsure of the frequency of his asthma attacks (A.R. 323-24), he had previously stated in an asthma questionnaire that he experienced asthma attacks and severe breathing problems every day (A.R. 92-93). Plaintiff's medical records contain few objective findings to corroborate the alleged frequency and severity of his asthma

attacks and related respiratory problems. In more than forty visits, Plaintiff's treating physician, Dr. Chopra, noted wheezing approximately six times. (A.R. 140-42,272-74.) Dr. Chopra consistently noted that Plaintiff's lungs were "normal" and that Plaintiff was "negative" for chest symptoms. (A.R. 138-43, 270-77.)  A September 2001 chest x-ray revealed no evidence of active pulmonary tuberculosis, coccidioidomycosis, or pneumonia (A.R. 259), and a subsequent respiratory assessment showed no abnormal findings (A.R. 260). A chest x-ray taken in December 2002 revealed that Plaintiff's lungs were well expanded with no hilar masses, focal consolidations, effusions, or other acute intrathoracic abnormalities. (A.R. 275.) Accordingly, the record contains substantial evidence supporting the ALJ's conclusion that Plaintiff's subjective complaints were not corroborated by objective medical evidence.

The record likewise supports the ALJ's rejection of Plaintiff's subjective complaints due to his failure to follow his physician's recommendations that he stop smoking. An ALJ may consider a claimant's failure to follow treatment advice as a factor in assessing a claimant's credibility. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999). Plaintiff smoked three to four packs of cigarettes a day for forty years. (A.R. 289.) By 2004, he had reduced his smoking to approximately half a pack every day. (A.R. 289.) Nevertheless, Plaintiff ignored multiple recommendations by his treating sources and continued to smoke. (A.R. 118, 124, 138, 141-143, 273, 276, 279, 288-89.) Furthermore, the record contains no evidence suggesting Plaintiff sought the aggressive anti-smoking counseling recommended by his

physician. (A.R. 289.) Accordingly, substantial evidence supports the ALJ's rejection of Plaintiff's subjective claims of disability based on the inconsistency between his allegations of disabling asthma and respiratory problems and his unexplained failure to follow the advice of his physicians.

The ALJ found that Plaintiff generally had a low level of credibility due to evidence contradicting his claims that he had serious difficulty reading and writing in English. (A.R. 16, 318.) An ALJ may consider whether the Plaintiff's testimony is believable or not in rejecting a claimant's subjective complaints. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999). Plaintiff testified that he had come to the United States thirty years before the hearing, but his spoken English was limited. (A.R. 336-37.) As to reading and writing English, he could only "do one word here and one word there." (A.R. 337.) For instance, Plaintiff claimed that he could not read the sports page of the newspaper. (A.R. 316.) The ALJ noted that a Social Security employee conducted a face-to-face interview with Plaintiff and reported that Plaintiff had no difficulty reading or understanding, presumably English. (A.R. 16, 82.) In addition, Plaintiff himself noted on a detailed written disability application that he could speak, read, and write more than his name in English. (A.R. 70.) Thus, the record supports the ALJ's conclusion that Plaintiff was not generally credible due to inconsistencies between his testimony and other evidence of record.

The ALJ further noted that Plaintiff's medications, specifically several types of inhalers, appeared to be effective

in treating his asthma because of their continued use by Plaintiff. (A.R. 16.) The efficacy of medication is a valid criterion for evaluating a claimant's credibility. Tidwell v. Apfel, 161 F.3d 599, 601-02 (9th Cir. 1998). The record indicates that Plaintiff was prescribed the inhalers in January 2004. (A.R. 289.) At the hearing in July 2004, Plaintiff testified that he carried his inhalers with him at all times and used them to help his breathing if his chest felt like it was tightening up. (A.R. 338.) In addition, Dr. Rios noted that Plaintiff's respiratory problems appeared to be clinically controlled. (A.R. 130.)

Plaintiff's continued reliance upon the inhalers over a period of approximately half a year and his testimony at the hearing support the ALJ's finding that the inhalers were an effective means of treating Plaintiff's respiratory problems. (A.R. 16.) Because the record does not contain any additional evidence regarding the efficacy of Plaintiff's medications, the Court notes that even if the record were to lack substantial evidence supporting the inference that Plaintiff's medications were effective in treating his asthma, the ALJ's credibility determination is nevertheless supported by other clear and convincing reasons, in turn supported by substantial evidence in the record, as discussed above. Cf., Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004).

Finally, Plaintiff argues that the ALJ erred in failing to consider Plaintiff's persistent efforts to obtain relief, including more than forty visits to his doctor between 1999 and 2004, as evidence of his credibility regarding the severity of

15

his symptoms. Although the Commissioner must make fairly detailed findings in support of administrative decisions to permit intelligent review by the courts, the Commissioner need not discuss all the evidence in the record when making his or her findings. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394 (9th Cir. 1984). Here, the ALJ set forth clear and convincing reasons, supported by substantial evidence, justifying his decision to discredit Plaintiff's subjective complaints.

Thus, the Court rejects Plaintiff's challenge to the ALJ's credibility determination.

III. <u>Medical Opinions</u>

Plaintiff argues that the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, for rejecting the opinion of Plaintiff's treating physician, Dr. Chopra, regarding Plaintiff's RFC. Dr. Chopra opined that Plaintiff could sit about four hours and stand or walk for about two hours in an eight-hour day. (A.R. 267.) He could rarely lift less than ten pounds, would need to take unscheduled breaks two to three times a day for about one hour, and could never stoop, crouch, or climb. (A.R. 267-69.) Dr. Chopra further opined that Plaintiff would have to avoid exposure to environmental phenomena such as cold, heat, dusts, gases, and solvents. (A.R. 268.) In addition, Dr. Chopra noted that Plaintiff had applied for SSI and concluded that Plaintiff could not be gainfully employed. (A.R. 276.)

The opinion of a treating physician is entitled to deference because of a greater opportunity to observe the patient as an individual and because the purpose of the relationship is to cure

the patient. <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999). However, an ALJ may disregard a treating physician's opinion whether or not it is contradicted. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).

A treating physician's opinion that is controverted by other medical opinions may be rejected by an ALJ only if specific, legitimate reasons for doing so are provided and supported by substantial evidence in the record. <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 762 (9th Cir. 1989). This burden is met by stating a detailed and thorough summary of the facts and conflicting clinical evidence, stating the interpretation of the evidence, and making findings. <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir 1986). A failure to set forth a reasoned rationale for disregarding a particular treating physician's findings is legal error. <u>Cotton v. Bowen</u>, 799 F.2d at 1408.

The medical opinion of a non-treating doctor may be relied upon instead of that of a treating physician only if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)). The contradictory opinion of a nontreating but examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician, where it is based on independent clinical findings that differ from those of the treating physician. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995). The findings of a nontreating, nonexamining physician can amount to substantial evidence so long as other evidence in the record supports those findings. <u>Saelee v.Chater</u>,

1   94 F.3d 520, 522 (9th Cir. 1996).

2   In the present case, the ALJ rejected Dr. Chopra's opinion
3   in part because the severe exertional restrictions imposed in his
4   RFC assessment were not supported by Dr. Chopra's treatment
5   notes. (A.R. 16.) It is appropriate for an ALJ to consider the
6   inconsistency of conclusions with a physician's own findings in
7   rejecting a physician's opinion. Johnson v. Shalala, 60 F.3d
8   1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016,
9   1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th
10  Cir. 1989). Although Dr. Chopra noted that Plaintiff suffered
11  from bronchitis and recorded multiple instances of wheezing (A.R.
12  137, 139-44, 272-74), a significant number of Plaintiff's visits
13  to Dr. Chopra were "follow-up" or "check-up" visits (A.R. 138-44,
14  273-74, 279, 285, 287-88, 290-91, 294, 297, 299-301).

15  Dr. Chopra frequently noted that Plaintiff complained of
16  coughing and shortness of breath. However, the majority of Dr.
17  Chopra's treatment notes indicate that Plaintiff's lungs and
18  chest were "normal" or "negative" for serious problems. (A.R.
19  137-139, 143, 276-277, 279, 286.) Whereas Dr. Chopra's RFC
20  assessment listed asthma as Plaintiff's only impairment (A.R.
21  265), the majority of Dr. Chopra's assessments overwhelmingly
22  focused on bronchitis as the cause of Plaintiff's symptoms (A.R.
23  137-44, 272-74, 277, 279). In addition, Dr. Chopra alleged that
24  Plaintiff suffered from one to two severe asthma attacks every
25  month that would incapacitate Plaintiff for one week. (A.R. 265-
26  66.) However, Dr. Chopra's progress notes fail to mention any
27  such asthmatic episodes. Accordingly, the ALJ's conclusion that
28  Dr. Chopra's RFC assessment was not corroborated by Dr. Chopra's

findings as reflected in the treatment notes is supported by substantial evidence.

The ALJ further rejected Dr. Chopra's opinion due to a lack of supporting objective medical evidence. (A.R. 16.) An ALJ may reject the medical opinion of a claimant's treating physician where the opinion is unsupported by clinical findings and is also contradicted by the opinions of other examining physicians. Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986). As discussed above, Dr. Chopra's treatment notes do not contain significant objective findings supporting his restrictive RFC assessment. Plaintiff's September 2001 x-ray showed that the coarse right lung markings found in June 2001 had cleared, and there were no residual infiltrates. (A.R. 146.) Although the x-rays revealed a few parenchymal calcifications and minimal fibrosis of the lungs, these were consistent with old granulomatous disease. (A.R. 128.) Dr. Rios, an examining physician, found that Plaintiff's chest expansion was symmetric and normal in appearance, with no notation of retraction and no usage of the accessory muscles for respiration. (A.R. 128.) Although Dr. Rios noted that Plaintiff had a slightly diminished lung field at the base of the right lung, he found no signs of wheezing or any other significant respiratory compromise. (A.R. 130-31.) Thus, substantial evidence, including the independent clinical findings of Dr. Rios, supports the ALJ's conclusion that Dr. Chopra's restrictive RFC assessment was not supported by objective medical findings.

The ALJ also rejected Dr. Chopra's opinion due to its conclusory nature. (A.R. 17.) A conclusory opinion that is unsubstantiated by relevant medical documentation may be

rejected, and it is likewise permissible for an ALJ to reject a check-off type of form lacking an explanation of the basis for the conclusions. See <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432-33 (9th Cir. 1995); <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th Cir. 1996) (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 501 (9th Cir. 1983)); <u>see Batson v. Commissioner of the Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004). These distinct reasons for rejecting Dr. Chopra's opinion were addressed en masse by the ALJ, who stated in pertinent part:

> Dr. Chopra did not indicate what criteria he used to base his determination of claimant's inability to work. There is definitely no indication in his own clinic notes he used the legal standards and considerations as prescribed by the Social Security Act in his assessment of claimant's condition. A mere statement of disability alone or a few "checkmarks" on a form do not present a persuasive argument and accordingly are not binding upon the undersigned or the Social Security Administration, and are not entitled to significant evidentiary weight.

(A.R. 17.)

The ALJ's reasoning on these points is supported by the record. As discussed above, Dr. Chopra's opinion as to Plaintiff's RFC was unsupported by objective clinical findings and other relevant medical documentation, including Dr. Chopra's treatment notes.[3] The ALJ further noted that prior to completing the RFC assessment, Dr. Chopra had only advised Plaintiff to stop smoking and avoid exposure to chemicals and dust. (A.R. 16, 145, 149.) Moreover, Dr. Chopra did not identify any specific

---

[3]Dr. Chopra failed to identify any clinical findings or pulmonary function test results showing Plaintiff's impairments on his RFC assessment. He merely listed his diagnosis of "asthma" in the space reserved for a description of the clinical findings. (A.R. 265.)

relationship between Plaintiff's impairments and his conclusions regarding Plaintiff's functional limitations and ultimate inability to work. Similarly, the assessment completed by Dr. Chopra was a "checkmark" type of form that lacked an explanatory basis for the functional conclusions therein. (A.R. 265-269.) Thus, the ALJ did not err in rejecting Dr. Chopra's RFC assessment due to its conclusory nature.

In addition to the reasons stated above, the ALJ relied on the opinion of the state agency physician who examined the medical evidence and evaluated Plaintiff's RFC. (A.R. at 17.) The state agency physician assessed a RFC consistent with the clinical findings and RFC assessment of Dr. Rios, which was also credited by the ALJ. (A.R. at 17, 154-161.) Accordingly, the ALJ stated specific and legitimate reasons, supported by substantial evidence, for rejecting the controverted medical opinion of Dr. Chopra.

III. <u>Lay Testimony</u>

Plaintiff argues that the ALJ erred by failing to state express reasons for either accepting or rejecting the testimony of Cynthia Bowles, Plaintiff's girlfriend.

Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir. 1993). Furthermore, an ALJ is required to consider the testimony of lay witnesses where a claimant alleges pain or other symptoms not supported by medical evidence of record. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996). To reject lay testimony, an ALJ must provide reasons germane to each

witness whose testimony he rejects. Smolen, 80 F.3d at 1288.

This Court is limited to reviewing the findings of the ALJ and to reviewing the specific facts and reasons the ALJ asserts. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). In the present case, the ALJ summarized the testimony of Ms. Bowles in a six-sentence paragraph immediately following his summary of Plaintiff's testimony. (A.R. 15.) The ALJ did not specifically address the testimony of Ms. Bowles at any other place in his opinion.

Accordingly, the ALJ erred in failing to give germane reasons for rejecting the testimony of Ms. Bowles.

Because the Ninth Circuit has applied the harmless error rule in the social security context, an ALJ's error is not necessarily grounds for reversal. Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990). The harmless error rule provides that an imperfect decision will not be reversed unless an ALJ's error has a material impact on the decision. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d. 1190, 1197 (9th Cir. 2004). However, the Ninth Circuit has recently "flesh[ed] out" the application of the harmless error rule as it pertains to an ALJ's treatment of lay testimony. Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006). Under the standard set forth in Stout, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." 454 F.3d at 1056.

22

In _Stout_, the claimant's sister and brother-in-law submitted testimony and a letter, respectively, indicating that the claimant experienced difficulty performing his previous work and required constant supervision. _Stout_, 454 F.3d 1053-54. The ALJ erred by failing specifically to discredit or otherwise refer to this body of lay testimony. _Id._ at 1054. In holding that the ALJ's failure was not harmless error, the court noted that an ALJ's "silent disregard" of lay testimony improperly prejudices a claimant's interests and generally precludes effective judicial review. _Id._ at 1056.

Application of the _Stout_ standard here indicates that the ALJ's error falls outside the scope of the harmless error rule. If credited, the testimony of Ms. Bowles, such as her description of Plaintiff's alleged inability to walk for short distances or to bag groceries, (A.R. 341-42), would support the conclusion that Plaintiff's impairments limited his ability to engage in gainful employment. Furthermore, it is not reasonably certain that the ALJ in the present case would have given the same weight to other evidence had he fully credited Ms. Bowles' testimony.

Accordingly, this Court cannot find that no reasonable ALJ could have reached a different disability determination.

The Court notes that _Stout_ may be distinguished from the present case because the lay testimony in that case was consistent with the medical evidence regarding the claimant's impairment. _Stout_, 454 F.3d 1053. In addition, the ALJ in the present case rejected Plaintiff's subjective complaints, which are substantially similar to the testimony of Ms. Bowles. However, this Court's application of the _Stout_ test is informed

23

by the fact that the Ninth Circuit has consistently refused to classify as harmless error an ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work. 454 F.3d 1055-56. The absence of reasons relating to the lay testimony leaves this Court nothing to review. Moreover, Stout clearly mandates a substantially restricted application of the harmless error rule in the context of lay testimony.

Accordingly, the Court holds that the ALJ's failure to address Ms. Bowles' testimony was not harmless error.

Disposition

Based on the foregoing, the Court concludes that the ALJ's decision was not supported by substantial evidence in the record as a whole and was not based on proper legal standards.

A district court is authorized to affirm, modify, or reverse a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The decision whether to remand a matter pursuant to sentence four of § 405(g) or to order immediate payment of benefits is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). When a court reverses an administrative agency determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citing INS v. Ventura, 537 U.S. 12, 16 (2002)). It is not necessary to order an award of benefits. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). Generally, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record

has been thoroughly developed. <u>Varney v. Secretary of Health and</u>
<u>Human Services</u>, 859 F.2d 1396, 1399 (9th Cir. 1988).

Because additional issues remain to be addressed, and
further because it is not clear that an award of benefits to
Plaintiff should result after the additional issues are addressed
on remand, the Court will order the matter remanded for further
consideration of the evidence and entering of all necessary and
appropriate findings with respect to the applications for DIB and
SSI pending before the Court.

Accordingly, it IS ORDERED that

1. Plaintiff's social security complaint IS GRANTED, and

2. The matter IS REMANDED pursuant to sentence four of 42
U.S.C. § 405(g) for further findings and statement of reasons,
and for further consideration, consistent with this decision, of
Plaintiff's status as disabled, including whether or not
Plaintiff could perform his past work, and, if appropriate,
whether on the basis of the Plaintiff's age, education, work
experience, and residual functional capacity, he could perform
any other gainful and substantial work within the economy; and

3. Judgment BE ENTERED for Plaintiff Carlos A. Machado and
against Defendant Jo Anne B. Barnhart.

IT IS SO ORDERED.

Dated:    September 21, 2006              /s/ Sandra M. Snyder
icido3                                   UNITED STATES MAGISTRATE JUDGE